## THE STATE v. AUTERY and AUTERY.

In an indictment for an assault and battery, it is proper to shew in mitigation of the fine, that there is a civil action pending for the same assault.

ALEXANDER AUTERY and ANONYMOUS AUTERY, were indicted in the Circuit Court of Conecuh county, for an assault and battery on one Charlton Thompson. At September term, 1827, the case was tried and the jury found the defendants guilty, and assessed against Alexander Autery a fine of five hundred dollars, and against Anonymous Autery twenty-five dollars. The Court reserved for the consideration of this Court, a point made in the cause under the provisions of the statute authorizing novel and difficult questions to be reserved, to wit: There was evidence before the jury shewing the pendency of a civil action for the same assault and battery; the Court refused to charge the jury that this was in mitiga-

JANUARY 1828.
The State
v.
Autery & Autery.

tion of the fine, and instructed them to take no notice of the pendency of the civil action.

This decision of the Court is assigned as error.

PERKINS, Attorney General, for the State.

PARSONS, for the defendants.

JUDGE WHITE delivered the opinion of the Court.

IN England and in most of the States, the jury have nothing to do in criminal cases but to pass on the guilt of the accused. The Courts are to pronounce the punishment annexed by law, and almost universally they have a discretion as to the extent of the imprisonment, or amount of fine. Where this is the case, it is considered both usual and legal for the Courts to hear mitigating circumstances to qualify and direct the exercise of their discretion. If then, it be right for the Courts having this discretion, to hear all that might aid them in the proper use of it, I cannot conceive why juries, who in this State are confided with the same discretion, should be excluded from the same privilege. It cannot be objected that they would not use and apply it with the same correctness as the Court. Those who have given them this power thought otherwise, and we should not withhold any thing necessary to its judicious exercise. The books in the States where this discretion is vested entirely with the Courts, of course contain decisions against the doctrine of referring such evidence to the jury. But when they admit that their Courts should hear it, they in principle say, that if their juries had the discretion of the Courts, it would be proper for them to hear it likewise. Such evidence would throw no light on the issue of guilty or not guilty, with which alone the juries in other States are charged, and therefore it is then excluded from them, but had they there the assessment of the fine as here, a different practice would prevail. Again, one of the main objects of human punishment is the reformation of the accused, and it is always desirable to apportion the punishment as nearly as practicable to the demerits of the offender. This I conceive is the very source of the discretionary power spoken of, whether given to the Court or jury. Therefore, to prevent a jury entrusted with this power, from hearing circumstances of mitigation which would tend to the proper exercise of it, would be to de-

feat the object of the law itself in giving it. A man, for example, of a general peaceable character, would not require as severe animadversion by fine, as one of turbulent deportment. A jury then in this State, though he were clearly guilty, and the best character could not nor should not acquit him, should be permitted to hear of his correct deportment generally, that they might properly apportion his fine. So if he had or was likely to suffer in another way, as the legal consequence of the same offence, I cannot perceive why the jury should not know and consider of that fact in ascertaining the portion of punishment necessary to be superadded to effect his reformation. Surely a recovery, or the probability of a recovery, in a civil suit for the same offence, must have some effect in reclaiming him; and if so, it ought to be taken into the estimate. The case cited from 13 Johnson, certainly shews that such a recovery would be considered by the Courts in that State, in the exercise of the same control over the fine which the juries have in this. In principle then, it goes far to sustain the doctrine contended for, unless a greater difference could be shewn than has been between a jury and a court similarly situated. But it is said that though a recovery in a civil action might, yet that the pendency of such action ought not be given in evidence, because the result is not ascertained. This only shews that it would not be as satisfactory and certain evidence, but not that it should be entirely excluded as worthless or dangerous. The jury who would try the State case, would generally pass on the same evidence that would be adduced in support of the civil action, and therefore could judge of the probable result of the latter. Again it is said, that the character of the case as a civil injury might often vary from its aspect as a breach of the public peace. This is true, but a jury after hearing the evidence, would, under the charge of the Judge, be competent to see it in all its bearings and aspects. Admit however, that it might sometimes be difficult to regulate evidence of this kind so as to prevent abuses, it does not follow that it should thereupon be entirely excluded. Greater evils would probably result from a different practice, by making the administration of justice subservient to private revenge, and converting punishment into oppression. We are then of opinion that the Judge on the Circuit erred in charging the jury

JANUARY 1828. that they should not regard the pendency of the civil suit for the same assault, in assessing the fines of the defendants; that the judgement must therefore be reversed and the cause remanded for further trial.